# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

ANAYELI ADELAIDA MARTIN MARTIN,

　　　　　Petitioner,

vs.

MARKWAYNE MULLIN, et al.,

　　　　　Respondents.

No. 26-CV-92-CJW-KEM

**ORDER**

_____

Petitioner Anayeli Adelaida Martin Martin's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 6). Petitioner filed a reply. (Doc. 12). For the following reasons, the Court **grants-in-part and denies-in-part** petitioner's petition for writ of habeas corpus and **orders** that respondents provide her with a bond hearing.

## I.　BACKGROUND

Petitioner is a citizen of Guatemala. (Doc. 9-1, at 3). On February 20, 2023, she arrived in the United States near Rio Grande City, Texas. (*Id.*). She entered without inspection and was not admitted or paroled. (*Id.*). At that time, she was seventeen years old and classified as an "unaccompanied alien child" ("UAC").[1] (Doc. 1-2, at 2 (listing

---

[1] The Court notes that on the state court documents, petitioner's birthdate is listed as December 12, 2004, making her eighteen years old on February 20, 2023. (Doc. 9-5, at 1–3). Likewise, she listed her date of birth on her Form I-360 and Form I-589 as December 12, 2004. (Doc. 1-4, at 9; Doc. 1-6, at 12). Her passport and birth certificate also lists her birthday as December 12, 2004. (Doc. 1-4 at 26, Doc. 1-6, at 24). And, at her at-risk juvenile hearing, she testified that her birthday was December 12, 2004, and listed it as the same on her petition for guardianship of at-risk juvenile and the order on the petition. (Doc. 1-4, at 30, 42, 51). The same petition states, "[t]he At-Risk Juvenile entered the United States on February 20, 2023 when she was eighteen (18) years old." (*Id.*, at 47). Respondents' record of deportable alien, however, lists her birthdate as July 12, 2005, making her seventeen when she entered the United

her date of birth as July 12, 2005)); s*ee* 6 U.S.C. § 279(g)(2) (defining a UAC as an individual who, "has no lawful immigration status in the United States," "has not attained 18 years of age," and for whom there is no available parent or legal guardian in the United States).

United States Border Patrol ("USBP") served petitioner a Notice to Appear ("NTA") charging her with being inadmissible for being present in the United States without being admitted or paroled, arriving at a time or place other than as designated by the Attorney General, and for failing to have the required immigration documents. (Doc. 1-3);[2] s*ee* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien[3] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]"); 8 U.S.C. § 1182(a)(7)(A)(i)(I) ("[A]ny immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa . . . or other valid entry document . . . and a valid unexpired passport, or other suitable travel document . . . is inadmissible."). She was released from Office of Refugee Resettlement custody to her adult sister in Postville, Iowa. (Doc. 1-2). *See* 8 U.S.C. § 1232(c) (outlining "safe and secure placements" for UACs).

---

States. Neither party disputes her classification as a UAC, however, so the Court merely notes the discrepancy.

[2] The Court notes that the NTA itself lists its date of service as March 28, 2023, but respondents claim that the NTA was served February 20, 2023. *Compare* (Doc. 9-2) *with* (Doc. 9-1). This discrepancy also makes no difference for the Court's analysis, so the Court merely notes it.

[3] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

Petitioner filed Form I-589, Application for Asylum and Withholding of Removal. (Doc. 1-6, at 4)[4]. On July 28, 2025, petitioner filed a Form I-360, Petition for Special Immigrant Juvenile Status ("SIJS"). (Doc. 1-4); *see* 8 U.S.C. § 1101(a)(27)(J) (including SIJS under the category "special immigrant" and defining an SIJS holder as an immigrant who has been declared a dependent for whom reunification with one or both parents would not be viable due to abuse, neglect, or abandonment and for whom it would not be in the best interest to return to their home country); 8 U.S.C. § 1255 (covering adjustment of status for SIJS holders). On February 8, 2026, the immigration court administratively closed immigration proceedings. (Doc. 1-7). On February 27, 2026, the Department of Homeland Security approved the SIJS petition. (Doc. 1-5).

On March 19, 2026, petitioner was arrested in Howard County, Iowa and charged with no valid driver's license, failure to obey stop sign and yield right of way, and failure to provide proof of financial liability - accident. (Doc. 9-5); *see* Iowa Code §§ 321.174(1), 321.322(1), and 321.20B. Petitioner pleaded guilty to all charges. (*Id.*, at 4). On March 21, 2026, Immigration and Customs Enforcement ("ICE") issued a warrant for petitioner's arrest and took petitioner into its custody. (Doc. 9-6).

On April, 21, 2026, petitioner filed the instant petition with the Court, requesting immediate release from ICE custody. (Doc. 1, at 8). "Only immediate release can resolve the issue given the liberty interest of [petitioner] in her SIJ[S]." (*Id.*, at 8–9). More specifically, petitioner states, "[t]he appropriate remedy for violation of liberty interest that comes with release is immediate release and that the [r]espondents provide the alien a pre-deprivation bond hearing where the [r]espondents must prove dangerousness and flight risk by clear and convincing evidence." (*Id.*, at 14). In support

---

[4] The form was signed May 2, 2025, served May 8, 2025, and received May 20, 2025. (Doc. 1-6, at 4–6, 20, 22). Respondents list it as filed May 13, 2025. (Doc. 9-1, at 3). This difference also makes no difference for the Court's analysis.

of her motion, petitioner provided the Court with Exhibits 1, 2, 3, 4, 5, 6, 7, and 8. (Docs. 1-2 through 1-9).  On May 12, 2026, respondents filed a response, arguing "[p]etitioner's detention is consistent with . . . due process."  (Doc. 6, at 8).  They also provided the Court with a declaration from Daniel Archer and Exhibits A, B, C, D, E, and F.  (Docs. 9-1, through 9-7).  On May 19, 2026, petitioner filed a reply.  (Doc. 12). Petitioner remains in ICE custody at the Linn County Jail.

## II.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention."  *Munaf v. Green*, 553 U.S. 674, 693 (2008).  Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention."  *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).  The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful.  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## III.    DISCUSSION

Petitioner argues that her continued detention violates the Due Process Clause of the Fifth Amendment.  (Doc. 1, at 9).[5]  More specifically, petitioner contends that "[b]oth

---

[5] After petitioner was detained but before she filed the instant petition, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), foreclosing

4

[p]etitioner's SIJS and prior release into the country by the Office of Refugee Resettlement establish a prior liberty interest in freedom from detention." (Doc. 1, at 9). Respondents recognize that "[p]etitioner's claim relies exclusively on due process." (Doc. 6, at 5). They assert, however, that "granting an SIJ application does not constitute admission or parole" and that her "prior placement with a suitable family member does not grant additional rights." (*Id.*, at 6–7).

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 79–80. At the same time, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law. *See Wolff v.*

---

any statutory basis for relief under Title 8, United States Code, Section 1226(a). Petitioner, in turn, does not raise any statutory claim.

*McDonnell*, 418 U.S. 539, 558 (1974). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Id.* at 558. This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984). A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine exactly the parameters of that opportunity to be heard the Court balances:

(1) the private interest that will be affected by the official action; against
(2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and
(3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the

6

degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Lastly, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, the Court agrees with petitioner that she acquired a liberty interest in release when the government released her from custody as a UAC in 2023. *See Ixquiactap-Ajpacaja v. Mullin*, No. 4:26-CV-3143, 2026 WL 1295702, at *1 (D. Neb. May 12, 2026) ("While the petitioner was not released 'on his own recognizance,'. . . the circumstances are analogous, and the petitioner was effectively subject to conditional parole."); *see also Elian J. v. Noem*, No. 26-CV-94 (JMB/DJF), 2026 WL 114333, at *3 (D. Minn. Jan. 14, 2026) (ordering a bond hearing for a UAC prior to *Herrera Avila*); *Maldonando v. Olson*, 795 F.Supp.3d 1134, (ordering a release on bond for a UAC prior to *Herrera Avila* but after she had reached adulthood).

The Court also agrees that she likewise acquired a liberty interest upon the government approving her SIJS petition. *See Walter A. v. Easterwood*, No. 26-cv-1393 (SRN/LIB), 2026 WL 836428, at *19 (D. Minn. Mar. 26, 2026) ("The SIJS statutory scheme protects Special Immigrant Juveniles from removal by exempting them from various grounds of inadmissibility, and provides a pathway to LPR status."). "The statutory language and history of the SIJS statutory scheme demonstrates Congress's clear intent that Special Immigrant Juveniles are to remain in the United States pending their application for adjustment of status." *Id.* at *20. Put another way, those "SIJS statutory protections . . . demonstrate that SIJS beneficiaries are to remain in the United States until they are able to obtain adjudication on their adjustment of status applications" and thus "are entitled to due process." *Id.* at *20–21 (collecting cases finding the same); *see also Ramos v. LaRose*, No.: 26cv0812-LL-VET, 2026 WL 931710, at *2 (S.D. Cal.

7

Apr. 6, 2026) ("The Court finds that having been previously released from immigration detention and being granted Special Immigrant Juvenile Status and deferred action, Petitioner has a protected liberty interest in remaining free from detention.").

The government has now arbitrarily revoked that interest by detaining her without demonstrating danger or flight risk. *See Singh v. Mullin*, No. C26-56-LTS-MAR, 2026 WL 1021846, at \*4 (N.D. Iowa Apr. 15, 2026) (ordering immediate release of an alien previously released on \$17,000 bond based on a due process clause violation); *Ermekov v. Mullin*, No. C26-41-LTS-KEM, 2026 WL 1046766, at \*3–4 (N.D. Iowa Apr. 17, 2026) (ordering immediate release of an alien previously released on an order of recognizance based on a due process clause violation). *But see Romero v. Brown*, No. 1:26-cv-00007-SMR-SBJ, 2026 WL 1021455, at \*5 (S.D. Iowa Apr. 15, 2026) ("mandatory detention pending a determination of removability comports with due process"). Thus, given petitioner's strong interest in release and the relatively minimal burden on the government in providing a bond hearing, the *Mathews* factors favor providing petitioner a bond hearing.

Respondents point out, however, that "unlike cases involving an alien's prior release on bond, there has been no prior determination of [p]etitioner's dangerousness or risk of flight." (Doc. 6, at 8). She was released not on bond, but based on her UAC status. And the Court notes that petitioner was brought to ICE's attention here based on her criminal convictions for no valid driver's license, failure to obey stop sign and yield right of way, and failure to provide proof of financial liability – accident.

Thus, the Court finds, despite its sister court ordering immediate release, that respondents must provide petitioner with a bond hearing. *See Dos Santos Silva v. Warden*, 8:26-CV-131, 2026 WL 926725, at \*2 (D. Neb. Apr. 6, 2026) ("the proper remedy in this case is to order the government to provide the petitioner a bond hearing, to determine whether the petitioner may be released"). At the hearing, the government

8

will bear the burden to demonstrate dangerousness or flight risk. *See Dambreville v. Noem*, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at *5 (S.D. Iowa Jan. 12, 2026) ("The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects settled practice in redetention cases."). This is so because "[w]hen the [g]overnment seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." *Id.*; *see also Trsikurishvili v. Noem*, No. C26-15-LTS-MAR, 2026 WL 594360, at *2 (N.D. Iowa Mar. 3, 2026) (ordering that the government "must provide [petitioner] a pre-detention hearing in which it bears the burden of proving by clear and convincing evidence that [he] is a danger to the community or flight risk or has failed to comply with the terms of his release"). Petitioner's request for habeas corpus relief is **granted** on this ground. Her request for immediate release from ICE detention is **denied**.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted-in-part and denied-in-part**. The Court hereby orders that within fourteen (14) days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk.

**IT IS SO ORDERED** this 26th day of May, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

9